IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHARLIE CUMMINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:06cv11 |
| | § | |
| WILLIAMS PRODUCTION-GULF COAST COMPANY, L.P., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART WILLIAMS PRODUCTION-
GULF COAST COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING
CUMMINGS'S MOTION FOR SUMMARY JUDGMENT**

On this day came on for consideration Plaintiff's Cross Motion for Summary Judgment [Dkt. No. 30] and Defendant's Cross Motion for Summary Judgment [Dkt. No. 44]. Having considered the motions, evidence and the responsive pleadings thereto, the Court is of the opinion, that Plaintiff's Cross Motion for Summary Judgment should be Denied, and Defendant's Cross Motion for Summary Judgment should be Granted in Part and Denied in Part.

**Background**

Both parties have moved for partial or summary judgment on their respective claims or defenses. The key question is whether a Facility Site Agreement was acquired by Williams Production-Gulf Coast Company, L.P. in a purchase and sale agreement between Williams and Llano Royalty Limited, a Texas Limited Partnership.

Sometime prior to the purchase and sale agreement, Llano's predecessor in interest entered into an undated Facility Site Agreement ("Agreement") with the Plaintiff, Charlie Cummings. The Agreement provides that for any oil or gas well drilled by Gas Gatherer, Llano,

on the land and within a ten mile radius of the land, Llano shall install a pipeline system and transport all gas produced from the wells to a site to be located on the land. The land is identified in Exhibit A to the Agreement.[1] Llano also agreed to build a processing facility on the land and process all gas produced from the Wells. The Agreement also requires that Llano must give Cummings written notice before assigning, selling, conveying or otherwise transferring part or all of the ownership of any facility *constructed* on the land. The contract is silent as to a time for construction or completion. No facility was ever constructed on the land.

## Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986). The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted). Once the moving

---

[1] Exhibit A lists three separate parcels.

party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must also articulate the precise manner in which evidence he sets forth supports his claims. *See Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted). Moreover, in designating specific facts, the nonmovant must "'go beyond the pleadings'" and use "'his own affidavits, . . . deposition[s], answers to interrogatories, and admissions on file.'" *Jones v. Sheehan & Young Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (citation omitted).[2]

If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (citations omitted).

## Discussion

A.   *Whether the Facility Site Agreement was an Asset Acquired*

The purchase and sale agreement recites that Llano owns and desires to sell *certain* real and personal property interests in Denton, Parker, Tarrant, Johnson, Wise, and Hill counties, Texas referred to as the assets more fully described in section 1.2 of the agreement.

---

[2] The Court also notes that Local Rule CV-56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence. . . ." Local Rule CV-56(c) further states that the Court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

Part of the assets are noted in section 1.2f of the agreement as follows: "The rights and obligations, to the extent transferable, in and to...... purchase, gathering, transportation and processing contracts ..... and other contracts, agreements and instruments relating to the interests described in section 1.2 a, 1.2b, 1.2c, 1.2d and 1.2e (the "Material Agreements") *including without limitation the agreements described on Exhibit B.* Section 1.2a identifies oil and gas rights and lists the Cummings property, which is the subject of the Facility Site Agreement, as an interest that is transferred (Exhibit A to the agreement). Therefore, any contract which relates to assets acquired as land, oil and gas rights, wells, unitization or pooling agreements and farmout agreements is defined as a material agreement.

Section 4.9 of the agreement is titled "Contracts." This section provides that "[A]ll of the Material Agreements are described on Exhibit B. . . . Seller has made available to Buyer complete and correct copies of the Material Agreements, including all amendments thereto." The Facility Site Agreement is not listed on Exhibit B.

There is no dispute that Williams was not a party to the contract between Llano or Cummings. There is also no dispute that the Facility Site Agreement is not mentioned in Article 1. Plaintiff argues that the agreement is in fact a gathering contract or plausibly an "other contract" which relates to the Cummings interest that is identified. If the only mention of a material agreement in the contract was found in 1.2f, then Cummings would be correct in his assertion that the Facility Site Agreement is a material agreement. The only question then is whether the language "including without limitation the agreements described on Exhibit B" expands those agreements acquired by Williams beyond all of the material agreements described on Exhibit B. "Including " and "without limitation" are redundant in that each asserts a breadth

-4-

of coverage beyond the item (Exhibit B) that those phrases immediately precede. *Bekhor v. Bear, Stearns and Co., Inc.*, 2004 WL 2389751 (S.D.N.Y.). Therefore, the clause, when viewed in a vacuum, supports Cummings's position. However, the inquiry does not end with this one phrase.

The language contained in a contract is accorded its plain grammatical meaning unless to do so would defeat the parties' intent. *See DeWitt County Elec. Co-op. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999). The Court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the written agreement. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To ascertain the true intentions of the parties to the contract, the Court is required to examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). The Court cannot rewrite the contract or add to its language under the guise of interpretation. *See id.* at 161-62 (stating "we may neither rewrite the parties' contract nor add to its language"). Rather, the Court must enforce the contract as written. *See Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965). When a contract contains specific terms within a general clause, the general portion of the clause should be read in light of the specific terms. *Flagship Hotel, Ltd. v. City of Galveston*, 117 SW 3d 552 (Tex. App. -Texarkana, 2003). In the end analysis, the rules of contract interpretation favor validity, and all provisions must be considered with reference to the whole instrument. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)).

Utilizing these well-known principles of construction, the Court finds that the Facility Site Agreement was not a material agreement acquired by Williams. First, the contract states that the owner desires to sell certain property interests, not all property interests; therefore, this is not a total asset sale and purchase. Second, although general mention is made as to purchase, gathering, transportation and processing contracts, there is no mention of a Facility Site Agreement. Third, those referenced contracts are included only to the extent they can be transferred. The Material Agreements are then defined as contracts noted in subsection f, which relate to the interests noted above, including without limitation the agreements described in Exhibit B. The language of 4.9 makes it quite clear that *all* the material agreements referenced in subsection f are listed on Exhibit B. In fact, all assets sold or assigned are either included or scheduled in Schedules A, A-1, A-2, the defined Farmout agreements, Schedule 4.12 or Exhibit B. Article 7.2a expressly notes that the representations and warranties of Seller contained in Article 4, of which 4.9 is a part, shall be true and correct in all *material respects* on and as of the Closing Date. This further signifies the parties' intent that only those material agreements listed in 4.9 were assigned. The form of assignment attached as Exhibit D also unequivocally notes that in the event of a conflict, the terms of the Purchase and Sale Agreement control. The proposed Exhibit E for assignment and assumption of contracts limits the assignment to those contracts included within the contracts and agreements conveyed to Williams. Again, where the assignment and the purchase and sale agreement conflict, the purchase and sale agreement controls.

Article 12 concerns the assumption of obligations relating to the assets. Nothing in Article 12.1 specifically mentions a facility site agreement or building a gathering system. In

fact, the only specific obligations referenced are payment of property expenses, overproduction obligations, royalties, taxes and environmental defects.  To adopt Cummings's position would require the Court to read the agreement to state that any contract related to an interest in land is assigned to Williams with or without its knowledge or consent.

Some dispute does appear to exist about whether this agreement was in Cummings's lease file.  Williams Production said it was not.  Llano said it was.  Cummings has submitted the affidavit of Looper, who was Llano's president.  His affidavit is an excellent example of "fence sitting."  He is careful to point out that the Facility Site Agreement was not listed in the schedule of assets purchased by Williams but was readily available for review in the Cummings file. The Court cannot consider extrinsic evidence when the contract is unambiguous.  *See generally R&P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 SW2d 517 (Tex. 1980).  In any event, the contract unequivocally states that all contracts noted in 1.2f that relate to lands, oil and gas rights, wells and farmout agreements are defined as Material Agreements.  All of the Material Agreements are listed on Exhibit B.  Williams had the right to rely on and did rely on  Llano's representation and warranty that all the material agreements were listed on Exhibit B.  Nowhere in the agreement is Williams directed to examine the lease files to determine what interests it is purchasing.  Those interests are scheduled.  Although Williams had the right to do due diligence and appears to have done so, whether such diligence was less than thorough is not an issue for the Court.  The Facility Site Agreement was not an included asset.  Cummings is not without legal recourse.  His complaint is with Llano not Williams.  As a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other

party to the contract. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.,* ----- S.W. 3d -----, 2006 WL 1651684 (Tex. 2006).

B.     *Whether the Facility Site Agreement Operates As An Equitable Obligation or Servitude*

Cummings alleges that the Facility Site Agreement is a covenant running with the land or an equitable servitude on the land. A real covenant "runs with land" if:(1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) it is intended by the original parties to run with the land; and (4) when the successor to the burden has notice. *Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987). By contrast, personal covenants bind only the actual parties to the covenant and those who purchase the land with notice of the restrictive covenant, if the restrictions concern land or its use. *Tarrant Appraisal Dist. v. Colonial Country Club,* 767 S.W.2d 230, 235 (Tex.App.-Fort Worth 1989, writ denied). The doctrine of equitable obligation or servitude operates when a landowner's promise binds a subsequent purchaser or possessor who acquires the land with the notice of the promise. *Clear Lake City Water Authority v. Clear Lake Utilities Company et. al.,* 549 S.W. 2d 385 (Tex. 1977). A contract to purchase gas imposes a servitude on the property on the subsequent purchaser who has full notice of such servitude. *See generally Prochemco, Inc. v. Clajon Gas Co.* , 555 Sw2d 189 (Tex. Civ. App.- Amarillo, 1977 writ ref'd n.r.e.); *American Refining Co. v. Tidal Western Oil Corporation*, 264 S.W. 335 (Tex. Civ. App.- Amarillo, 1924 writ ref.'d ). The Facility Site Agreement specifically provides that it is binding on the successors and assigns of the Gas Gatherer. The land is specifically identified. The fact that three separate parcels are identified does not make the agreement ambiguous. The agreement is to build pipelines, equipment and other facilities servicing wells from a 10 mile radius of the

defined land. The land is defined as three separate parcels. The Court finds that at a minimum the Facility Site Agreement operates as an equitable servitude and that there is a fact issue as to whether Williams had notice of such contract.

## Conclusion

It is therefore ordered that Williams Production Company's Motion for Summary Judgment is granted in part and denied in part. Cummings's Motion for Summary Judgment is denied for the reasons stated herein.

**SIGNED this 18th day of January, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE